## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BALL, | : | Civil No. 1:09-CV-773 |
| | : | |
| Plaintiff, | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| C.O.HILL, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case.

### A.   Dawn  Ball's Litigation History

The plaintiff, Dawn Ball, is a state prisoner and a prodigious federal court

litigant.  Indeed, at present Ball has a total of sixteen lawsuits pending before this

Court.[1]  Ball is also a prodigiously unsuccessful litigant, who has had at least three

prior lawsuits dismissed either for failure to exhaust her administrative remedies, or

as frivolous on the grounds that the lawsuit failed to state a claim upon which relief

_____

[1] See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-
Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.);
Ball v. Beard, No. 1:09-CV-846 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846,
(M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-
CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther,
No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball
v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830
(M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-
CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v.
Famiglio, No. 1:11-CV-1834 (M.D.Pa.)

could be granted. <u>See, e.g.</u>, <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.); <u>Ball v.</u>

<u>Hartman</u>, No. 1:09-CV-844 (M.D. Pa.);  <u>Ball v. Butts</u>, No. 1:11-CV-1068, (M.D.Pa.);

<u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.    <u>Ball's Current Lawsuit</u>

It is against this backdrop that Ball instituted the current lawsuit.  Ball's *pro se*

civil rights complaint, which was filed on April 22, 2009, (Doc. 1) and was amended

on March 19, 2010, (Doc. 28), names twenty-nine correctional officials, and three

contract health care providers as defendants. (<u>Id</u>.)  The amended complaint then recites

that in March and April of 2009 Ball was housed in the Restricted Housing Unit at the

State Correctional Institution (SCI) Muncy.  According to Ball, on or about March 31,

2009, RHU staff physically, and perhaps sexually, assaulted her.  Ball then alleges that

RHU correctional staff verbally abused her, and unlawfully confiscated her property,

while medical staff refused her requests for care and treatment for her injuries. (<u>Id</u>.)

While the complaint lists 32 defendants, including the RHU and medical staff who

allegedly directly participated in these episodes, the complaint also names at least

seven supervisory officials as defendants.[2]

---

[2]These supervisory defendants include: Superintendent Lamas, Major
Bechdel, Deputy Shepler, Captains Robenolt, Craver and Moser, as well as
grievance coordinator Troy Edwards.

With respect to these supervisory personnel the complaint does not allege that any of these officials committed these acts, directed these actions or acquiesced in these acts in advance of the assault.  Instead, the gravamen of Ball's complaint seems to be that the officials received reports of these events after-the-fact from Ball in April 2009, but failed to act upon those reports in the twenty days that elapsed prior to the filing of Ball's civil complaint on April 20, 2009.

Ball's complaint sues these officials in their official and individual capacities, and seeks wide-ranging relief, including compensatory and punitive damages. (Id.) The complaint also alleges that Ball exhausted all of her administrative remedies in the twenty days which ensued between the onset of these incidents and the filing of her civil complaint. (Id.)  Ball attributes this complete exhaustion to a claim that she employed all administrative remedies that were "available" to her and that correctional staff prevented her from otherwise fully exhausting these remedies by denying her access to grievance forms.

The correctional and medical defendants have now filed motions to dismiss Ball's complaint, (Docs. 43 and 45), alleging that Ball has failed to exhaust her administrative remedies and has further failed to state a claim upon which relief can be granted.  These  motions have been fully briefed by the parties, (Docs. 46, 48, 53, and 54), and are now ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted, in part, and denied, in part, as follows.

## II.   <u>Discussion</u>

### A.   <u>Rule 12(b)(6)– The Legal Standard.</u>

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions.  Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that certain claims in this complaint are subject to dismissal, as discussed separately below:

### B.      Ball May Not Maintain Claims For Damages Against Prison Officials in their Official Capacities

At the outset, the defendants urge the Court to dismiss the plaintiff's claims for damages against these prison officials in their official capacities.   To the extent that Ball seeks damages from state officials acting in their official capacities, she is barred from obtaining such relief by constitutional and statutory constraints.  First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he

Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI.  By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a § 1983 suit brought against an individual acting in his or her official capacity has been deemed to be a suit against the state and, therefore, is also barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This broad grant of immunity from damages claims in federal court admits of only two exceptions:  First, a state can waive its immunity, see Alden v. Maine, 527 U.S. 706, 755 (1999), or, second, Congress can expressly abrogate that state immunity, provided that Congress "both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001).

    With respect to Ball's damages claims, it is apparent that Congress has not expressly abrogated this constitutional immunity with respect to federal lawsuits, and the Commonwealth clearly has not waived its immunity.  Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity

in 42 Pa.C.S.A. §8521(b).   While Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, see 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b).

Moreover as a matter of statutory interpretation, Ball cannot rely upon § 1983 to bring a damages action against the state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Department of State Police, 491 U.S. 58 (1989).   Therefore both as a matter of statutory interpretation, and by virtue of the immunity conferred upon the states by the Eleventh Amendment, Ball is forbidden from maintaining this damages action against state officials acting in their official capacity under § 1983. See, e.g., Quern v. Jordan, 440 U.S. 332, 342 (1979); Edelman v. Jordan, 415 U.S. 651, 663 (1974).   Of course, Ball remains free to pursue damages claims against these defendants in their individual, personal capacities.

### C.   Ball's Complaint Fails to State Any Claims Against The Prison Supervisors.

Ball's amended complaint names seven prison supervisors as defendants, but does not allege well-pleaded facts which show that these officials personally directed or acquiesced in assaults upon the plaintiff by RHU staff.  Instead, the apparent articulated rationale for inclusion of these defendants in this lawsuit is Ball's allegations that they were informed of these episodes at some point in time after the assault but did not act upon these reports to the plaintiff's satisfaction in the twenty days between the inception of this incident, (March 31, 2009), and the filing of this complaint, (April 20, 2009).  Thus, the plaintiff's complaint as to these defendants is premised on their alleged failure to respond to her complaints with alacrity, and nothing more.

This is a fatal flaw in this pleading since it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997);  see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual

knowledge and acquiescence in the challenged practice. <u>Robinson v. City of</u>

<u>Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . <u>See Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); <u>see also Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006).

Here, Ball's amended complaint does not allege that these supervisors directed the conduct of staff, or had advance knowledge of that conduct and expressly acquiesced in it. Rather, Ball names these defendants solely because she alleges that they failed to investigate and act upon her complaints within twenty days. This allegation does not provide a basis for supervisory civil liability. Quite the contrary, it is well-settled that inmates cannot sustain claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no

liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).
>
> Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, Ball's claims against the supervisory prison defendants named in this amended complaint consist of little more than assertions of

*respondeat superior* liability, coupled with apparent but unarticulated dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim.  Therefore, these defendants are entitled to be dismissed from this case.[3]

### D.   Disputed Factual Issues Preclude Dismissal of the Remaining Claims and Defendants

While we find that dismissal of these official capacity damages claims, and supervisory defendants, is now appropriate we conclude that disputed factual issues

---

[3]We recognize that Ball's brief disclaims any *respondeat superior* theory of liability and insists instead, in a conclusory fashion, that all of these officials had actual knowledge of these events and acquiesced in these alleged assaults.  This bare assertion, however, cannot save Ball's complaint as to these defendants for at least two reasons.  First, it is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  <u>Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984)); <u>cf.</u> <u>Frederico v. Home Depot</u>, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").  Since the claims made by Ball in her brief are not articulated in her complaint, that complaint may not be amended through this brief.  More fundamentally, Ball's assertion that supervisors acquiesced in these actions is presented in her brief in a wholly inadequate manner, in the form of "labels and conclusions, and a formulaic recitation of the elements of a cause of actions [which] will not do."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Finally, we also recognize that Ball asserts that at some unidentified time and place defendant Lamas is alleged to have told the plaintiff to be "careful."  This allegation, standing alone, does not in our view create a factual issue as to the Superintendent's personal culpability in this matter.

preclude the entry of judgment as a matter of law on the remaining claims, defenses and defendants.

For example, the medical defendants urge the Court to dismiss the plaintiff's claims because Ball has failed to timely exhaust the administrative remedies available to her, noting that it would have been physically impossible for Ball to fully exhaust these claims during the twenty days between the onset of this alleged episode and the filing of her civil complaint.  Ball, in turn, has countered this defense claim by asserting that corrections officials frustrated her efforts to exhaust claims timely by failing to provide her with copies of grievance forms and refusing to accept or act upon her grievances.

This dispute, which comes before the Court on an incomplete factual record, is critically important because Ball's alleged failure to timely pursue these administrative remedies can have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1197e(a).  Section 1997e's exhaustion requirement applies to a wide-range  of inmate complaints, including damages complaints like those made by Ball grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v.

Churner, 206 F.3d 289 (3d Cir. 2000).  While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.  Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).   Applying  this  procedural  default  standard  to  §  1997e's  exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006). This requirement of strict adherence to the timetables prescribed by prison grievance policies is compelled by the important policies underlying the PLRA.  As the Supreme Court has noted:  "Proper exhaustion demands compliance with an agency's deadlines

and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

This broad rule admits of one, narrowly defined exception.  If the actions of prison officials directly caused, or contributed to, the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d. Cir. 2000).  However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of  failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra,  49 F. App'x at 368. See also, Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, was impeded in filing a timely grievance, or some other extraordinary circumstances intervened and prevented compliance with the grievance process, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F.App'x 365, 368 (3d Cir. 2002). Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

In this case, a straightforward application of the Department of Corrections exhaustion procedures and time-lines suggests that Ball could not have fully exhausted her grievances in 20 days. Therefore, Ball can avoid dismissal of these claims on

exhaustion grounds only if she was misled by corrections officials, was impeded in filing a timely grievance, or was unable to timely file this grievance due to some other extraordinary circumstances.

While this is an exacting burden which Ball must ultimately meet, at this time there are unresolved, threshold factual questions which prevent us from reaching any final conclusions regarding whether this exhaustion requirement has been satisfied, or should be excused.  Ball has alleged that prison officials actively frustrated her efforts to lodge grievances, a claim that has not been responded to in any fashion by the defendants.   These assertions, if true, could excuse a delay in exhausting his administrative remedies. See, e.g., Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).  At a minimum, these unresolved questions create a factual dispute which precludes dismissal of this case on the pleadings on exhaustion grounds.  Indeed, where there are factual questions concerning the extent to which an inmate's efforts to exhaust his grievances were impeded or delayed by the actions of prison officials, judgment in favor of the defendants as a matter of law clearly is not appropriate. See,

e.g., Knauss v. Shannon, No. 08-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010);

Born v. Monmouth County Correctional Institution, No. 07-3771, 2008 WL 4056313

(D.N.J. Aug. 28, 2008).

Thus, at present, disputed material issues of fact prevent us from reaching any

final conclusions on the question of whether Ball timely exhausted his administrative

remedies.  Therefore, it is recommended that this motion to dismiss be denied without

prejudice to the renewal of this claim on a more complete factual record.

These same factual considerations preclude entry of judgment in favor of the

defendants on Ball's wrongful confiscation of property claims.  Inmate due process

claims arising out of the confiscation of property are judged against settled legal

standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may
> be accommodated to a prison's legitimate security needs. See Bell v.
> Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
> [Therefore] "[A]n unauthorized intentional deprivation of property" by
> prison officials does not violate the Due Process Clause "if a meaningful
> postdeprivation remedy for the loss is available." Hudson v. Palmer, 468
> U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v.
> Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-
> deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, a crucial component to any inmate due process claim in this setting is an

allegation that property was taken and the prisoner was afforded no post-deprivation

administrative remedy.  In this case, liberally construed, Ball's complaint alleges that

her property was taken without due process, and that she was denied the opportunity

to grieve this confiscation.  These assertions, which are currently unrebutted, create

a factual issue concerning whether Ball was given "a meaningful post-deprivation

remedy for the loss" of property.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  This

disputed factual issue, in turn,  prevents us from reaching any judgment as a matter of

law on the merits of this particular claim at the present time.

Finally, while we note that the medical defendants have moved to dismiss the

Eighth Amendment claims lodged against them, we conclude that unresolved factual

questions also preclude dismissal of these claims at present.  Ball faces an exacting

burden in advancing this Eighth Amendment claim against prison officials in their

individual capacities.  To sustain such a claim, Ball must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted). In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id. "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Ball is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials

that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus,

such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that

claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted)

While this is an exacting standard, and we do not opine regarding whether Ball can ultimately meet this demanding test, we note that the well-pleaded facts in Ball's amended complaint allege that she was assaulted and seriously injured on or about March 31, 2009.  Ball then asserts that medical staff deliberately chose to ignore her requests for treatment in order to avoid documenting her injuries.  These assertions, at a minimum, create issues of fact which must be resolved at another time, and in another forum.

## III.   **Recommendation**

For the reasons set forth above, IT IS HEREBY RECOMMENDED THAT defendants' motions to dismiss, (Docs. 43 and 45), be GRANTED, in part, and DENIED, in part as follows:

1.   All official capacity damages claims should be DISMISSED.

2.    The following supervisory defendants should be DISMISSED: Superintendent Lamas, Major Bechdel, Deputy Shepler, Captains Robenolt, Craver and Moser, as well as grievance coordinator Troy Edwards.

3.    In all other respects the motions to dismiss should be DENIED without prejudice to the submission of subsequent, more thoroughly documented dispositive motions.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of October, 2011.

***<u>S/Martin C. Carlson</u>***

Martin C. Carlson

United States Magistrate Judge
